IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Teresa Busha, ) | C/A No. 6:18-cv-02337-DCC |
| Plaintiff, ) | |
| v. ) | **OPINION AND ORDER** |
| SC Department of Mental Health, ) | |
| Defendant. ) | |

This matter comes before the Court on Defendant SC Department of Mental Health's Motion for Summary Judgment. ECF No. 36. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial handling and a Report and Recommendation ("Report"). On May 18, 2020, the Magistrate Judge issued a Report recommending that the Motion be granted. ECF No. 53. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed Objections, and Defendant filed a Reply. ECF Nos. 54, 55.

**BACKGROUND**

This action was filed in state court on August 3, 2018, and removed on August 22, 2018. ECF Nos. 1, 1-1. However, as described in the Report, the matter presently before the Court is not Plaintiff's first suit against this Defendant. Plaintiff's first lawsuit against Defendant, which was filed in state court on January 26, 2017 and subsequently removed to federal court, alleged claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"),

1

29 U.S.C. § 701, *et seq.*; the Family and Medical Leave Act ("FMLA"); and the Fair Labor Standards Act ("FLSA"). *See Busha v. S.C. Dep't of Mental Health*, C/A No. 6:17-00571-DCC ("*Busha I*"). That action was resolved at summary judgment. Plaintiff now asserts claims of disability discrimination and retaliation under the Rehabilitation Act. ECF No. 1-1.

Plaintiff makes no objection to the Magistrate Judge's thorough recitation of the facts and procedural history of this case, and they are incorporated herein by reference. *See* ECF No. 53 at 1–6.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2015) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (citation omitted)).

**DISCUSSION**

*I.     Discrimination*

The Magistrate Judge recommends that summary judgment be granted as to Plaintiff's discrimination claim on the merits[1] because of her failure to demonstrate that she was a "qualified individual" for her former position at the time of firing.  In the absence of direct evidence, which Plaintiff does not dispute has not been presented, discrimination claims under the Rehabilitation Act are evaluated under the *McDonnell Douglas* burden-shifting framework.  *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (citations omitted).  The plaintiff has the initial burden to establish a prima facie case of discrimination.  *Id*.  This requires a showing that "(1) [the plaintiff] is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of the disability."  *Id*. (quoting *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011)).  If the plaintiff succeeds in establishing her prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action.  *Id*.  Finally, if the defendant can provide such a reason, the plaintiff "bears the ultimate burden of persuasion" to show by a

---

[1] Judge West also found that Plaintiff had "abandoned any discrimination claim for failure to discuss it in opposing summary judgment." ECF No. 53 at 16.  While it is true that the "failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action," *Eady v. Veolia Transp. Servs.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009) (citations omitted), the practical effect of such waiver or abandonment is not straightforward.  Failure to respond to a motion for summary judgment "does not fulfill the burdens imposed on moving parties by Rule 56"; the moving party must still demonstrate entitlement to judgment as a matter of law.  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).  In other words, while Plaintiff's failure to discuss her discrimination claim certainly bears on the summary judgment analysis, it does not solely entitle Defendant to its requested relief.  Therefore, the Court agrees with Judge West's decision to evaluate Plaintiff's discrimination claim on the merits and will do likewise.

3

preponderance of the evidence that the proffered nondiscriminatory reason was a pretext for discrimination. *Perry*, 429 F. App'x at 220 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006)).

Defendant argues in its Motion for Summary Judgment that Plaintiff's application for social security disability insurance ("SSDI"), filed around the time of her termination, is inconsistent with a finding that she was otherwise qualified to perform her job. ECF No. 36-1 at 13–17. Although a significant portion of Defendant's briefing was devoted to the issue, Plaintiff made no mention of her SSDI application in her response. *See generally* ECF No. 41. In her Objections, Plaintiff now argues for the first time that her "application for SSA [Social Security Administration] disability did not equate to her inability to perform her job *with* reasonable accommodation especially in light of the fact she had been DENIED for the SSA Disability she had applied for."[2] ECF No. 54 at 4. Because Plaintiff articulates this argument for the first time in her Objections, the Court is not required to consider it. *See Doe v. Chao*, 306 F.3d 170, 183 n.9 (4th Cir. 2002); *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 412 (D.S.C. 2014) (citations omitted). However, the

---

[2] Plaintiff makes this argument under the heading: "The Magistrate Judge erred by finding that Plaintiff failed to make out a prima facie case *for Retaliation* under the Rehabilitation Act of 1973." ECF No. 54 at 1 (emphasis added). Despite the apparent confusion between claims, the Court construes Plaintiff's argument that she was "otherwise qualified" for her job as pertaining to her claim of discrimination because Defendant did not make this argument in connection with her retaliation claim and because qualification is not an element of a Rehabilitation Act retaliation claim, though it might sometimes constitute relevant evidence. *See, e.g., Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (listing the elements necessary to establish a prima facie case of retaliation).

4

Court has discretion to address novel arguments at the objection stage and will do so here.

While there is no special presumption that a plaintiff receiving SSDI benefits cannot succeed under a disability discrimination theory, it is well established that such a plaintiff "cannot simply ignore her SSDI contention that she was too disabled to work." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999). Instead, "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA [Americans with Disabilities Act] claim." *Id*. at 807. As Plaintiff emphasizes in her Objections, she was never a recipient of SSDI benefits. Her application, which was pending at the time of her termination, was ultimately denied. The *Cleveland* Court remarked that "if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system." *Id*. at 805. Nevertheless, the duty to provide an explanation appears to arise from the plaintiff's former SSDI *claim*, not from that claim's success. *See id.* at 805 ("we would not apply a special legal presumption [to] someone who has *applied for, or received*, SSDI benefits" (emphasis added)), 806 ("an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability *claim*") (emphasis added)). Therefore, the Court agrees with the Magistrate Judge's conclusion that Plaintiff was required to provide some explanation for the apparent inconsistency. Plaintiff has failed to do so.

Moreover, as Defendant points out, the appended evidence of Plaintiff's statements goes well beyond a generalized assertion of disability. In the Adult Function

Report that she completed on July 20, 2017, as part of her SSDI application, Plaintiff made a number of statements about her specific functional capabilities. She reported that she could no longer cook, clean, feed her animals, or dress herself fully due to her disabling conditions. ECF No. 36-10 at 3. She further reported that her husband helped her dress at times and helped her with certain aspects of bathing, such as her hair. *Id*. She claimed that her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. *Id*. at 7. The psychological effects of her conditions impacted her memory, concentration, understanding, and ability to complete tasks and follow instructions. *Id*. She reported that in following written instructions, she "get[s] confused I guess because of the meds." *Id*.

> The Court in *Cleveland* explicitly noted that the case before it did not
>
> involve directly conflicting statements about purely factual matters, such as "The light was red/green," or "I can/cannot raise my arm above my head." An SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, "I am disabled for purposes of the Social Security Act." And our consideration of this latter kind of statement consequently leaves the law related to the former, purely factual, kind of conflict where we found it.

526 U.S. at 802. In the present case, Defendant has persuasively argued that the function-related statements made by Plaintiff at or around the time of her termination conflict with her assertion that she could perform the essential functions of her job. While there is some conflicting evidence about what those essential functions comprised,[3]

---

[3] Plaintiff argues in her response to Defendant's motion that cleaning and preparing residents' meals were "marginal" rather than "essential" functions of her job. ECF No. 41 at 7–8. This is supported by the State of South Carolina Position Description, which lists only providing direct care attention to residents, assisting residents in medication administration, and assisting and coordinating transportation of clients to medical appointments as essential functions. ECF No. 41-7. Conversely, Plaintiff's 2014 performance evaluation lists "cleaning, laundrey [sic], meal preparation and clean-up" as

6

Plaintiff has not explained how the specific limitations alleged in her Adult Function Report, which appear to indicate significant difficulty in caring for herself, would allow her to "[p]rovide[] direct care attention to residents." ECF No. 41-7. Nor does she explain how her confusion and difficulty following written instructions would allow her to safely perform the essential duty of "assist[ing] residents in medication administration and compliance." *Id*. Plaintiff does not dispute that these were essential functions of her position as stated in the position description, nor that her day-to-day duties involved resident care and medication administration.

The Court concludes, in the total absence of explanation by Plaintiff, that the functional limitations described in Plaintiff's Adult Function Report were inconsistent with the essential functions of her job. Therefore, she was not a "qualified individual" and her prima facie case fails. The Court further notes, in the alternative, that even if Plaintiff had succeeded in her prima facie case, she would have failed at the pretext stage for the same reasons described in connection with her retaliation claim below.

## II.     Retaliation

Claims of retaliation without direct evidence are also analyzed under the burden-shifting *McDonnell Douglas* framework. The plaintiff must first make a prima facie showing that (1) she engaged in protected activity, (2) the employer took adverse action against her, and (3) the adverse action was causally connected to the protected activity. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting

---

essential job duties, ECF No. 41-2 at 4, and Plaintiff's own deposition testimony indicates substantial cleaning and meal preparation duties, *see* ECF No. 36-6 at 7–11. Because the Court finds that Plaintiff's SSDI claim and self-reported functional limitations were apparently inconsistent even with those job duties conceded to be essential, the Court need not decide whether the additional duties were also essential.

7

*Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).  The burden then shifts to the defendant to provide a legitimate, non-discriminatory explanation for the adverse employment action.  If the defendant succeeds, the burden returns to the plaintiff to "establish[] that the employer's proffered explanation is pretext."  *Id*.  The Magistrate Judge recommends that summary judgment be granted as to Plaintiff's retaliation claim because it establishes neither a prima facie case nor pretext.

Plaintiff asserts that her "request for accommodations, her protest that she was required to pay for the Functional Capacity Examination, and her ultimate suit and pursuit thereof are protected activity for which she was retaliated against."[4]  ECF No. 41 at 6.  Plaintiff's requests for accommodation and legal filings unquestionably qualify as protected activity within the meaning of the Rehabilitation Act.  *See*, *e.g.*, *Rhoads v. FDIC*, 257 F.3d 373, 393 (4th Cir. 2001); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).  Plaintiff also successfully establishes that Defendant took an adverse employment action against her, i.e., termination.[5]  Defendant argues however, and the Magistrate Judge agrees, that

---

[4] There is also some indication that Plaintiff believes she was retaliated against for other protected activities not referenced in her Complaint or response.  *See* ECF No. 36-4 at 13 (Plaintiff's deposition testimony that Defendant retaliated against her because she "was a threat with access to information such as the falsification of the legal document").  Plaintiff does not explain any basis for this belief in her briefing, cite to record evidence to support it, or raise the issue in her Objections.

[5] Plaintiff alleges several other retaliatory actions in her response, including requiring Plaintiff to perform various job duties upon her return to work in August 2016 and "writing up" Plaintiff for using her cell phone in May 2017.  *See* ECF No. 41 at 7–8.  She further alleges, in her Objections, a "campaign of retaliation" involving "plotting against Plaintiff and musing about everything from how they can replace Plaintiff while she is out fighting breast cancer, to changing Plaintiff's shift when she comes back . . . ."  ECF No. 54 at 5–6.  Any claims based on these earlier employment actions are barred by the statute of limitations and/or by res judicata.  Indeed, some were explicitly raised and addressed by the Court in *Busha I*.  *See Busha I*, C/A 6:17-00571-DCC, ECF No. 29 at 16 ("Plaintiff indicates she was 'retaliated against by being written up and/or forced to

Plaintiff fails to establish the causation element of her prima facie case. In her response to Defendant's motion, Plaintiff's sole argument in support of a causal link is the "temporal proximity between Plaintiff's protected activity and the adverse action." ECF No. 41 at 9. Specifically, she argues that she received notice that she was going to be terminated 53 days after filing a response to Defendant's motion for judgment on the pleadings in *Busha I*.

The Court agrees with the Magistrate Judge that Plaintiff has provided no authority for considering "Plaintiff's Response in Opposition to Defendant's Motion for Judgment on the Pleading" as a discrete retaliatory action for purposes of establishing temporal proximity. *See* ECF No. 41 at 9. Plaintiff's contention that protected activity "includes filing and participating in a lawsuit based thereupon" is certainly true but unresponsive to the disputed issue. The question is not whether Plaintiff's suit against Defendant constituted protected activity, but whether an individual brief filed in her ongoing lawsuit can provide the temporal anchor for demonstrating causation in a retaliation claim. Upon de novo review the Court concludes that it cannot, particularly as Plaintiff provides no evidence that the Defendant decision-makers who terminated Plaintiff were aware of the brief's contents. Even assuming that the date of the adverse employment action is correctly construed as June 26, 2017 (notice recommending termination), and not August 4, 2017 (date of termination), over six months had passed since the initiation of Plaintiff's suit in federal court. Such a long period of separation is generally insufficient, without more, to create an inference of causation. *See* ECF No. 53 at 20 (collecting cases).

---

perform non-essential functions of her job outside of her physical capacity.'") (citations omitted).

Moreover, even if Plaintiff could demonstrate sufficient temporal proximity to meet her prima facie burden, this Court agrees with the Magistrate Judge that she fails to demonstrate pretext. Defendant has proffered two legitimate, nondiscriminatory reasons for Plaintiff's termination: (1) falsifying a medication log and (2) failing to provide medical documentation as directed for leaving early on June 16, 2017 ("insubordination"). ECF No. 36-3 at 2.

First, with respect to Plaintiff's failure to provide medical documentation for her June 16, 2017, absence, the Magistrate Judge correctly noted that Plaintiff wholly failed to address this issue in her response. As previously noted, this Court is not required to consider novel arguments at the objection stage. *See Doe*, 306 F.3d at 183 n.9; *Addison*, 47 F. Supp. 3d at 412 (citations omitted). Nevertheless, the Court will in its discretion consider Plaintiff's objections.

Plaintiff's main contention is that she can establish evidence of pretext because Defendant's treatment of her undocumented absence was contrary to its own policies. Germane to Plaintiff's particular circumstances, the cited Leave Policies provide:

> In individual cases when there is reason to believe that sick leave is being abused, the supervisor should inform the employee in writing that because a question has arisen concerning the use of sick leave, a medical certificate will be required for each future application for sick leave until further notice. If medical evidence is not submitted with each future application the time shall be charged to leave without pay.

ECF No. 54-5 at 15. Plaintiff does not dispute that she was required to provide such certification. *See* ECF Nos. 54 at 6 ("Defendant . . . required Plaintiff to provide a doctor's note for *any* amount of absence"); 36-4 at 12 (Plaintiff's deposition testimony that "I had to bring in a doctor's excuse on the days that I had my appointments or I was out"). To the extent Plaintiff argues that the requirement to provide documentation was, itself, a

10

retaliatory act, this claim is time-barred. Plaintiff's current action was filed on August 3, 2018. ECF No. 1-1 at 7. Plaintiff has conceded that the applicable statute of limitations to her claims is one year from the alleged retaliatory act. *See* ECF No. 41 at 11. Without scouring the record for the exact date on which Plaintiff was directed to provide medical documentation for all absences, it is clear that this date was prior to June 26, 2017, the date of the Notice of Intent to Terminate. ECF No. 36-3 at 2. Therefore, the Court will not entertain any argument that this requirement itself constituted retaliation in violation of the Rehabilitation Act. As to Plaintiff's argument that her termination violated the above-cited policy, the Court is unpersuaded. The provision that undocumented medical leave time "shall be charged to leave without pay" does not appear to foreclose additional disciplinary action for taking leave without permission. Plaintiff has provided no evidence that other, similarly situated employees did not also receive additional discipline or that it was Defendant's policy not to impose further discipline for unexcused and undocumented absences under these circumstances.

The other Leave Policies provisions cited by Plaintiff are less specific and no more helpful to her case. For instance, the provision that "[u]nauthorized absences such as tardiness, etc., should be charged as leave without pay," ECF No. 54-5 at 7, likewise addresses how unauthorized absences should be charged against an employee's accrued sick leave, but does not appear to foreclose further disciplinary action. Plaintiff was explicitly required to provide medical documentation for all absences and failed to do so. The provision stating that sick leave may be denied for employees who have "received verbal approval for sick leave" but fail to submit a written request for leave "within a timely manner and in no case later than two weeks" is inapposite. ECF No. 54-

5 at 14.  Defendant avowedly terminated Plaintiff for failing to provide medical documentation, not for failing to submit a written request, and Plaintiff provides no evidence that she had "received verbal approval" for her June 16, 2017, absence.  In sum, Plaintiff has not established by a preponderance of the evidence that Defendant terminated her in violation of its own policies, or that Defendant terminated her as retaliation for her various protected activities.

Second, with respect to Plaintiff's "falsifying an official document" as stated in the Notice of Intent to Terminate, ECF No. 36-3 at 2, Plaintiff argues that this reason for her termination was pretextual because (1) a similarly situated employee made "the exact, same offense of a medication error" and was not terminated and (2) the error was within Defendant's acceptable performance standards.  ECF No. 54 at 13–14.  Despite Plaintiff's reference to an "alleged" medication error, there is no genuine dispute based on the record evidence that such an error was made—or at least that Defendant did not reasonably believe such an error was made.  In the Medication Error Report dated June 20, 2017, Plaintiff wrote that she "overlooked giving [redacted] Clonazepam (Klonopin) 0.5 mg PO which is a controled [sic] drug."  ECF No. 36-5 at 2.

Plaintiff urges the Court to find that Defendant's treatment of another employee who made a medication error demonstrates that this reason for her termination was pretextual.  The attached Adverse Incident Report, dated January 17, 2015, reads as follows:

> Resident was given wrong medication in error from this writer at 7:40pm. Meds given belonged to another resident and error was recognized when this writer was about to give the other resident their medicine.  Once error was recognized, this writer immediately called House Supervisor, Crystal Tate (7:52pm).  Ms. Tate informed this writer to contact non-emergency

> EMS (8:03pm) and explain to them the situation.  Greenville non-emergency EMS was contacted (8:08pm) and EMS was sent out to McKinney House.

ECF No. 41-12.  Plaintiff testified at her deposition that the subject employee, Ms. Lykes, held the same position as she did but that she had not reviewed any of Ms. Lykes's performance evaluations or disciplinary actions, nor had she discussed Ms. Lykes's performance or the medication incident with anyone else at the South Carolina Department of Mental Health.  ECF No. 45-1 at 11–13.

"Evidence that an employer gave a similarly situated employee more favorable treatment can be 'especially relevant' evidence of pretext."  *Saunders v. Metro. Prop. Mgmt.*, 806 F. App'x 165, 171 (4th Cir. 2020) (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013)).  Employees are similarly situated where they are similar "in all relevant respects."  *Cole v. Family Dollar Stores of Md., Inc.*, 811 F. App'x 168, 173 (4th Cir. 2020); *Hurst v. Dist. of Columbia*, 681 F. App'x 186, 193 (4th Cir. 2017); *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014).  In a case of allegedly disparate discipline, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."  *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Assuming without deciding that evidence of Ms. Lykes's medication incident is properly considered at the summary judgment stage,[6] the Court does not find sufficient similarity between Plaintiff's situation and Ms. Lykes's to carry Plaintiff's burden of demonstrating pretext.  The precise reason given for Plaintiff's termination in the Notice

---

[6] The Magistrate Judge found that Plaintiff had not "laid a proper evidentiary foundation for considering information about the 2015 incident involving employee Lykes." ECF No. 53 at 22.  This Court does not reach the question and expresses no opinion as to the Magistrate Judge's finding.

of Intent to Terminate was "falsifying an official document," i.e., the medication log. ECF No. 36-3 at 2. There is no evidence that Ms. Lykes recorded false information on any official document. On the contrary, the Adverse Incident Report shows that Ms. Lykes recognized and self-reported her own error within twelve minutes of its commission. This is in contrast to Plaintiff's error, which was discovered the following day by a different employee. *See* ECF No. 36-6 at 13. Plaintiff has not, moreover, provided any evidence that Ms. Lykes was similarly situated in other respects such as performance or disciplinary history. The Court finds that Plaintiff cannot establish pretext by the attached evidence of Ms. Lykes's medication incident.

Finally, Plaintiff argues that because her medication error was "within the limits of the performance standards" promulgated by Defendant, she can demonstrate that it was a pretextual reason for her termination. ECF No. 54 at 13. Plaintiff cites as evidence her 2014 performance review, which lists various job duties and defines their "success criteria." ECF No. 41-2 at 4. Under the job duty of assisting residents in "medication administration and compliance," the success criteria are listed as:

> Meets = Administers medications daily and provides education regarding medicines to residents. Maintains yearly medication administration training. Assures that medications are ordered timely without errors 95% of the time. Exceeds = Meets and 97% error free. Substantially Exceeds = Exceeds with 99% error free.

*Id*. Plaintiff contends that because her error was a "FIRST OFFENSE medication error," her performance met the expectation of 95% accuracy and was not grounds for firing. ECF No. 54 at 13. This argument ignores, once again, the precise reason given for Plaintiff's termination: "falsifying an official document." ECF No. 36-3 at 2. The success

14

criteria do not define any metrics for recording false data on a medication log; they refer only to errors in ordering medication.

In short, the Court cannot conclude from the proffered evidence that either of Defendant's legitimate, nondiscriminatory reasons is pretextual. Because Plaintiff has not carried her burden at the pretext stage, the Court adopts the Magistrate Judge's recommendation to grant summary judgment as to her retaliation claim.

## **CONCLUSION**

For the reasons set forth above, the Court **OVERRULES** Plaintiff's Objections [54] and **ADOPTS** the Report [53] except as otherwise noted above. Defendant's Motion for Summary Judgment [36] is **GRANTED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

September 29, 2020
Spartanburg, South Carolina

15